**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **EXOCAD GMBH** | ) | |
| **Julius-Reiber – Str. 37** | ) | |
| **D-64293 Darmstadt** | ) | |
| **Germany** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. _____** |
| | ) | |
| **vs.** | ) | **COMPLAINT FOR COPYRIGHT** |
| | ) | **INFRINGEMENT AND DMCA** |
| **PROTECH DENTAL STUDIO, INC.** | ) | **VIOLATIONS** |
| **a Virginia Corporation,** | ) | |
| **1890 Preston White Dr., #300** | ) | **JURY TRIAL DEMANDED** |
| **Reston, VA 20191,** | ) | |
| **      and** | ) | |
| **IL JANG, an Individual** | ) | |
| **42080 Byrnes View Terrace** | ) | |
| **Aldie, VA  20105,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

Plaintiff, exocad GmbH ("exocad GmbH" or "Plaintiff"), by and through its undersigned

counsel, as and for its Complaint against Defendants, Protech Dental Studio, Inc. and Il Jang, an

individual,  alleges as follows:

**JURISDICTION AND VENUE**

1.      This is a civil action seeking monetary (damages and disgorgement) and

injunctive relief for willful copyright infringement and willful violation of the anticircumvention

provisions of the Digital Millennium Copyright Act ("DMCA") under the Copyright Laws of the

United States, 17 U.S.C. §§ 101 *et seq*.  This is a software copyright piracy case.  As set forth in

greater detail below, this action involves the knowing, intentional and willful DMCA violations

and unauthorized willful piracy, copying, reproduction, distribution, performance, display and/or transfer of Plaintiff's exocad DentalCad professional software programs by Defendants.

2.     This action arises under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq*. (the "Copyright Act").

3.     This Court has jurisdiction pursuant to 28 U.S.C. § 1338(a) (copyright) and 28 U.S.C. § 1331 (federal question), and with respect to any claims under state law, by the principles of pendant jurisdiction.

4.     Defendants reside in this Division and elsewhere in this Judicial District.

5.     Upon information and belief, personal jurisdiction in this District is proper because each Defendant is present in this District, and without the consent or permission of Plaintiff, the exclusive rights owner, within this District, willfully reproduced, copied, distributed, performed, displayed and/or offered to distribute among other third parties the copyrighted exocad DentalCAD software program for which Plaintiff owns exclusive rights. Defendants also willfully violated the anticircumvention  provisions of the DMCA.  Plaintiff has used geolocation technology to trace the Internet Protocol ("IP") address of each Defendant to a point of origin within this District.  Each Defendant has an IP address based in this District and committed DMCA violations and copyright infringement in this District.

6.     In the alternative, this Court has personal jurisdiction over any non-resident Defendants, if any, under the Virginia long-arm statute, VA Code § 8.01-328.1, because any such non-resident Defendant downloaded, uploaded, copied, reproduced, distributed and/or performed copies of the exocad DentalCAD software program within this District from or to residents located in this District, thereby committing a tortious act within the meaning of the statute.

7.      Venue in this District is proper under 28 U.S.C. § 1391(b) and/or 28 U.S.C. § 1400(a).  Defendants reside in this District, may be found in this District and/or a substantial part of the acts of infringement complained of herein occurred in this District.

**The Parties**

8.      Plaintiff, exocad GmbH is a corporation organized and existing under the laws of Germany, with an office and principal place of business at Julius-Reiber – Str. 37, D-64293 Darmstadt, Germany.  Exocad GmbH owns all rights in the exocad DentalCAD software programs.

9.      Defendant  Protech Dental Studio, Inc. ("Defendant" or "Protech") is a corporation organized and existing under the laws of the Commonwealth of Virginia, with an office and principal place of business at 1890 Preston White Drive, #300, Reston, VA  20191.

10.      Defendant Il Jang ("Defendant" or "Jang") is an individual who resides at 42080 Byrnes View Terrace, Aldie, VA  20105.  On information and belief, at all times relevant hereto, Defendant Jang was and is an employee of Defendant Protech and acted at the direction and under the supervision of Protech and its officers, directors and managing agents within the scope of his employment.  Defendant Protech and Defendant Jang shall hereinafter be collectively referred to as "Defendants."

11.      exocad DentalCAD is the leading OEM branded dental CAD (computer-aided design) software program which provides a complete software solution for digital dentistry.  The exocad DentalCAD software program provides digital dentistry solutions from simple single unit copings to complex implant retained superstructures permitting the digital design of dentistry solutions efficiently.  The standard version of exocad DentalCAD software program covers a wide variety of indications making it an attractive choice both for expert users and newcomers in

the Dental CAD field.  It is a robust, yet simple and intuitive DentalCAD software program used

by dentists and orthodontists worldwide.  exocad's products, including its exocad DentalCAD

software program, are used in more than 120 countries and are trusted by tens of thousands of

dentists and dental labs worldwide.

### The exocad DentalCAD Software Programs

12.     Two releases of the exocad DentalCAD software program are at issue in this

lawsuit:  exocad DentalCAD 2015-07-16 ("exocad DentalCAD 2015") and exocad DentalCAD

2016-10-19 ("exocad DentalCAD 2016").  Each of these releases is protected by the U.S.

Copyright Act and has been registered with the U.S. Copyright Office.

13.     The exocad DentalCAD 2015 release was registered as TX 8-308-597, effective

February 24, 2017.  A true and correct copy of the Certificate of Registration is attached hereto

as Exhibit 1.

14.     The exocad DentalCAD 2016 release was registered as TX 8-308-590, effective

February 24, 2017.  A true and correct copy of the Certificate of Registration is attached hereto

as Exhibit 2.

15.     The registered exocad DentalCAD 2015 release and the registered exocad

DentalCAD 2016 release shall hereafter be referred to collectively as the "exocad DentalCAD

Software Programs."

16.     exocad GmbH owns the copyrights and other rights in the exocad DentalCAD

Software Programs and Copyright Registrations TX 8-308-597 and TX 8-308-590.

17.     The registered exocad DentalCAD Software Programs contain wholly original

material that is copyrightable subject matter under the laws of the United States.

18.     The registered exocad DentalCAD Software Programs covered by Copyright Registrations TX 8-308-597 and TX 8-308-590 are presumed valid.  The copyright registrations constitute prima facie evidence of the validity of the copyrights and the facts stated in the certificates of registration.

19.     The registered exocad DentalCAD Software Programs currently are offered for license and distribution, and have been distributed and/or are being used in commerce in the United States and in this judicial district.

20.     Defendants had notice of Plaintiff's rights in the exocad DentalCAD Software Programs through general publication and advertising of the programs, through the proper copyright notice contained within each of the exocad DentalCAD Software Programs, and through advertising associated with the exocad DentalCAD Software Programs.

**The exocad Security Dongle – Technical Measures Controlling Access
to the exocad Software Programs and Protecting the Rights of the Copyright Owner**

21.     The exocad DentalCAD Software can only be used when a security dongle is inserted into the USB drive of a computer.  The security dongle is a technological measure within the meaning of 17 U.S.C. § 1201 that effectively controls access to the exocad DentalCAD Software Programs and protects the rights of the copyright owner, Plaintiff.  When distributing the software, exocad licenses security dongles to its distributors, who in turn sublicense the security dongles to end-customers by distributing one or more security dongle(s) to each customer.  Prior to distribution, Plaintiff loads the memory of each individual security dongle with a unique serial number and type.  This serial number cannot be altered by any ordinary means.  An additional area of the security dongle memory is initialized, but not enabled. This area of memory contains the license status of individual modules within the exocad DentalCAD software.

22.     Through a secure process, the distributor can purchase and enable additional modules on the security dongle by altering the memory on the dongle.  This process is not available for end-user customers of the software.

23.     The end-user customer can download the exocad DentalCAD Software and copy it onto one or more computers.  The exocad DentalCAD Software Programs contain the operating program for all modules, plus the security code to read the dongle and only execute modules that are licensed on the specific security dongle used.

24.     When a user places a dongle in a USB port of a computer, the exocad DentalCAD Software Programs read the serial number, type, and enabled modules from the security dongle, and automatically transmits to Plaintiff this information and the date, time, IP address of the computer being used.   Based on this information, and a reverse-IP address lookup process, Plaintiff knows that more users are using the exocad DentalCAD Software Programs than have been licensed to use those programs, and that the IP addresses of the users are hosted by companies located in this judicial district in Virginia and elsewhere, including in other countries.

**Defendant's Wrongful Acts**

25.     On  or about October 5th, 2017, Imagine Milling Technologies, Inc. ("IMilling"), an authorized distributor of exocad DentalCAD software, sub-licensed and delivered to Defendant Protech a valid security dongle for use with the exocad DentalCAD Software Programs.  During this process, two (2) modules were activated.

26.     Between approximately October 5th, 2017 and October 29th, 2017, Defendants Protech and Jang, and possibly others at Protech, accessed various exocad DentalCAD software programs using the specific, unique dongle that had been licensed to Protech.

27.     Sometime during October 2016, and possibly on or about October 27, 28 and 29,
2016, Defendant Jang, on information and belief, at the direction of and under the control of his
employer, Defendant Protech, and/or acting jointly with Defendant Protech, circumvented the
security protections provided by the exocad security dongle.  Specifically, on or about the dates
stated above, Defendants either (a) altered the code of the exocad DentalCAD Software
Programs to remove and/or replace a section of the software code that is responsible for checking
the exocad security dongle and communicating with exocad servers; or (b) used a USB
interceptor or software code serving as a USB interceptor to fool, spoof or emulate the exocad
security dongle and exocad's servers into believing they were communicating with the genuine
dongle licensed to Defendant Protech.  This enabled defendants to access and turn on software
modules for which Defendants had not paid and were not licensed to use, and to make extra
copies of the exocad DentalCAD Software Programs.  This also enabled Defendants to reproduce
and distribute pirated copies of the exocad DentalCAD Software Programs and the USB
interceptor or other circumventing software code or device to third parties in violation of
Plaintiff's copyrights, and enabled the third parties to download, copy, reproduce and/or
distribute the exocad DentalCAD Software Programs for which they were not licensed and for
which they had not paid.

28.     In addition, or in the alternative, in approximately the same time frame, and
possibly on or about October 5, 27, 28 and 29, 2016, Defendant Jang, on information and belief,
at the direction of and under the control of his employer, Defendant Protech, and/or acting jointly
with Defendant Protech, "cracked" the exocad security dongle by providing, creating or using a
surrogate dongle or device that responds to the exocad Software in the same manner as would a
legitimate exocad software dongle.  On information and belief, Defendants accomplished this by

(a) producing a surrogate dongle, coded in a manner or otherwise capable of "fooling" the exocad Software Programs into believing it was a legitimate exocad security dongle; (b) modifying a legitimate exocad security dongle provided by exocad to overcome the inherent security checks; or (c) using a virtual USB dongle driver to emulate a dongle that does not exist. In each of these cases, the legitimate exocad Software Programs and exocad servers respond believing that a valid and legitimate exocad dongle exists, when one does not exist.  The hacking methods alleged in paragraphs 27 and 28, including the USB interceptor and other software code or device, shall hereinafter be collectively referred to as the "hacked and cloned security dongles."

29.     Defendants Protech and Jang then manufactured, offered to the public, provided or otherwise trafficked in the hacked or cloned security dongles that were primarily designed or produced for the purpose of circumventing the encryption software on the legitimate security dongles that effectively control access to the exocad DentalCAD Software Programs.  Those hacked or cloned security dongles manufactured, offered or provided by or trafficked in by Defendants had no or only limited commercially significant use other than to circumvent the encryption software contained in a legitimate exocad security dongle.  These hacked or cloned security dongles manufactured, copied, offered, provided by or trafficked in by Defendants were marketed by Defendants acting together or with third parties for the sole purpose of circumventing the encryption software contained on the legitimate exocad security dongle that effectively controls access to the exocad DentalCAD Software Programs.

30.     Sometime during that period between approximately September 29, 2017 and November 15, 2017, Defendants Protech and Jang then cloned and copied the hacked and cloned security dongles making illegal, unauthorized copies of them for unauthorized copying and

distribution of the exocad DentalCAD Software Programs to enable and facilitate the infringement of the software programs by third parties.  On information and belief, Defendants together and individually then made illegal copies of the exocad DentalCAD Software Programs and distributed those illegal copies and the hacked and cloned security dongles in violation of U.S. Copyright laws.

31.     Defendants then distributed, without authorization and for their commercial gain, the illegally hacked and cloned dongles to third parties thereby enabling those third parties to download and copy the exocad DentalCAD Software Programs, which were neither authorized nor licensed, in violation of U.S. copyright laws.  On information and belief, Defendants received a direct financial benefit from their distribution for commercial gain of the hacked and cloned security dongles thereby facilitating their customers' illegal infringing copying and use of the exocad DentalCAD Software Programs in violation of U.S. Copyright laws and from their unauthorized copying and distribution of the exocad DentalCAD Software Programs.

32.     The exocad DentalCAD Software Programs are directly infringed each time a user of a hacked and cloned security dongle uses that dongle to access, download, copy and use the software.

33.     By providing the hacked and cloned security dongles and copies of the exocad DentalCAD Software Programs to third parties, Defendants had knowledge of their infringing activity, and then induced, caused and materially contributed to that infringing conduct. Defendants not only materially contributed to the activity but promoted and caused the infringing conduct by their willful, illegal and unauthorized distribution of the hacked and cloned security dongles to third parties who they knew would download, copy and use the exocad DentalCAD

Software Programs in violation of U.S. Copyright law. Indeed, the hacked and cloned security dongles were distributed by Defendants for that very purpose.

34. Defendants had the right and ability to supervise or control the infringing activity of the third parties to whom Defendants illegally distributed copies of the exocad DentalCAD Software Programs and the hacked and cloned security dongles. Defendants distributed the hacked and cloned security dongles to facilitate their customers' illegal downloading and use of the exocad DentalCAD Software Programs in violation of U.S. Copyright law and Defendants directly benefited financially from that illegal copying, distribution and use of the exocad DentalCAD Software Programs.

35. Through this conduct, Defendants willfully intended to infringe, copy, distribute, display and/or perform the exocad DentalCAD Software Programs in direct competition with Plaintiff. Defendants have copied and altered the exocad DentalCAD Software Programs and hacked and cloned security dongles and, on information and belief, have used, performed, and distributed and are using, performing, and distributing those pirated copies for profit with the willful intent to violate Plaintiff's copyrights in the exocad DentalCAD Software Programs.

36. These same software programs and the hacked and cloned security dongles are now being made available for sale illegally online through web site(s), registered and/or hosted in other countries. Defendants willfully distributed and are distributing those unauthorized illegal hacked and cloned security dongles together with unauthorized infringing copies of Plaintiff's exocad DentalCAD Software Programs to third parties.

37. The exocad DentalCAD Software Programs are sophisticated professional OEM software solutions which are licensed for significant license fees. Defendants, through their illegal use, copying, distribution, derivation, display and performance of illegally hacked and

cloned security dongles and pirated copies of the exocad DentalCAD Software Programs have injured and are continuing to injure Plaintiff.

38.     Plaintiff brings this action to stop Defendant from using, copying, performing, displaying and distributing to others unauthorized pirated versions of Plaintiff's exocad DentalCAD Software programs, and from creating and distributing hacked and cloned security dongles that are intended to circumvent the technical measure provided by the exocad security dongles that control access to the exocad DentalCAD Software Programs.  Plaintiff seeks redress for this rampant, ongoing infringement of Plaintiff's exclusive rights in the exocad DentalCAD Software Programs and its other rights embodied in the anticircumvention provisions of 17 U.S.C. §§ 1201 *et seq*.

## COUNT I

## COPYRIGHT INFRINGEMENT

### (exocad DentalCAD 2015 Release – TX 8-308-597)

39.     Plaintiff incorporates and realleges as if fully set forth herein paragraphs 1 through 38 of this Complaint.

40.     The exocad DentalCAD Software Programs have been and are being lawfully distributed by Plaintiff in the U.S.  The exocad DentalCAD Software Programs have significant value and were created and produced by Plaintiff exocad GmbH at considerable expense.

41.     On information and belief, Defendants illegally obtained, copied, distributed, created derivative works of, displayed and/or performed the exocad DentalCAD Software Programs, without authorization or permission from Plaintiff, with willful intent to violate Plaintiff's exclusive rights in the exocad DentalCAD Software Programs.

42.     Defendants were not licensed to copy, distribute and/or alter the exocad DentalCAD Software Programs that they have illegally copied and distributed and were never authorized to hack and clone any exocad security dongle, and did not pay the required license fee to access and use the exocad DentalCAD Software Programs that were illegally copied and distributed through use of the hacked and cloned security dongles.

43.     Defendants have violated and are violating Plaintiff's exclusive rights of reproduction, distribution, performance, display, derivation and other exclusive rights of copyright.

44.     Through their actions alleged herein, Defendants have intentionally and willfully infringed, in disregard of and with indifference to, Plaintiff's rights, including Plaintiff's exclusive rights in Plaintiff's registered exocad DentalCAD 2015 release, U.S. Copyright Reg. TX 8-308-597, under the U.S. Copyright Act, 17 U.S.C. § 101 et seq.

45.     As a direct and proximate result of each Defendant's violation and infringement of Plaintiff's rights, including Plaintiff's exclusive rights under the U.S. Copyright Act, Plaintiff is entitled to actual damages and any additional profits of the infringer pursuant to 17 U.S.C. § 504.

46.     Each Defendant's conduct has caused, is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant form further infringing Plaintiff's copyrights and other rights and ordering impoundment and destruction of all unauthorized copies of the exocad DentalCAD 2015 Release wrongfully copied and distributed.

## COUNT II

## COPYRIGHT INFRINGEMENT

### (exocad DentalCAD 2016 Release – TX 8-308-590)

47.     Plaintiff incorporates and realleges as if fully set forth herein paragraphs 1 through 46 of this Complaint.

48.     Through their actions alleged herein, Defendants have intentionally and willfully infringed, in disregard of and with indifference to, Plaintiff's rights, including Plaintiff's exclusive rights in Plaintiff's registered exocad DentalCAD 2016 release, U.S. Copyright Reg. TX 8-308-590, under the U.S. Copyright Act, 17 U.S.C. § 101 et seq.

49.     As a direct and proximate result of each Defendant's violation and infringement of Plaintiff's rights, including Plaintiff's exclusive rights under the U.S. Copyright Act, Plaintiff is entitled to actual damages and any additional profits of the infringer pursuant to 17 U.S.C. § 504.

50.     Each Defendant's conduct has caused, is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant form further infringing Plaintiff's copyrights and other rights and ordering impoundment and destruction of all unauthorized copies of the exocad DentalCAD 2016 Release which Defendants copied and/or distributed.

## COUNT III

## CONTRIBUTORY COPYRIGHT INFRINGEMENT

### (exocad DentalCAD 2015 Release – TX 8-308-597)
### (exocad DentalCAD 2016 Release – TX 8-308-590)

51.     Plaintiff incorporates and realleges as if fully set forth herein paragraphs 1 through 50 of this Complaint.

52.     The exocad DentalCAD Software Programs are infringed every time a user uses an unauthorized hacked and cloned security dongle to access, download, copy and display the software.

53.     By copying and distributing the hacked and cloned security dongles with the intent that its customers and others use them to access, download, copy and display the exocad DentalCAD Software Programs, illegally without authorization or license, Defendants knew and had reason to know that the software programs were and are being infringed in violation of U.S. Copyright laws and thereby Defendants have contributed and continue to materially contribute to the unauthorized reproductions, displays and distribution by their customers and others of the exocad DentalCAD Software Programs.  Indeed Defendants created and distributed the hacked and cloned security dongles with the object of promoting the use of the hacked or cloned security dongles to infringe Plaintiff's exocad DentalCAD Software Programs.

54.     Defendants thereby induced, caused and or materially contributed to the infringing conduct of their customers and others to whom they distributed the hacked and cloned security dongles.

55.     Defendants had reason to know and had actual knowledge of the direct infringements occurring by their customers and others to whom Defendants copied and distributed the hacked and cloned security dongles without authorization.

56.     Defendants' acts of infringement have been willful, intentional, purposeful, and in disregard of and with indifference to Plaintiff's rights.

57.     As a direct and proximate result of Defendants' infringements of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to actual damages and Defendants' profits pursuant to 17 U.S.C. § 504(b) for each infringement.

58.     Defendants' conduct has caused, is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from further infringing Plaintiff's copyrights and other rights and ordering impoundment and destruction of all unauthorized copies of the exocad DentalCAD Software Programs.

**COUNT IV**

**VICARIOUS INFRINGEMENT OF COPYRIGHT**

**(exocad DentalCAD 2015 Release – TX 8-308-597)**
**(exocad DentalCAD 2016 Release – TX 8-308-590)**

59.     Plaintiff incorporates and realleges as if fully set forth herein paragraphs 1 through 58 of this Complaint.

60.     The exocad DentalCAD Software Programs are infringed every time a user uses an unauthorized hacked and cloned dongle to access, download, copy and display the software.

61.     Defendants have, and continue to have, as the sublicensor, the right and ability to supervise and control the infringing conduct of their customers and others who are engaged in the ongoing copyright infringement by terminating their access to the exocad DentalCAD Software Programs and the illegally hacked and cloned security dongles.  Defendant Protech has, and continues to have, as the employer of Defendant Jang, the right and ability to supervise and control the infringing conduct of Jang and possibly others who are engaged in the ongoing copyright infringement by terminating their access to the exocad DentalCAD Software Programs

and the illegally hacked and cloned security dongles.  However, Defendants have failed to exercise such supervision and/or control, and instead have facilitated their customers' and others' ongoing infringement of copyrights in Plaintiff's exocad DentalCAD Software Programs.  As a direct and proximate result of Defendants' failure, Defendants' customers and others have repeatedly infringed and will continue to repeatedly infringe Plaintiff's copyrights in its exocad DentalCAD Software Programs.

62.     Defendants derived and continue to derive substantial and direct financial benefit from the infringements of the exocad DentalCAD Software Programs by their customers and others in the form of financial remuneration paid to Defendants for the illegal hacked and cloned security dongles which provide access to the exocad DentalCAD Software Programs.

63.     Defendants had reason to know and have actual knowledge of the direct infringements occurring by their customers and others to whom Defendants copied and distributed the hacked and cloned security dongles and software programs illegally and without authorization.

64.     Defendants' acts of infringement have been willful, intentional, purposeful, and in disregard of and with indifference to Plaintiff's rights.

65.     As a direct and proximate result of Defendants' infringements of Plaintiff's copyrights and exclusive rights under copyright, Plaintiff is entitled to damages and Defendants' profits pursuant to 17 U.S.C. § 504(b) for each infringement.

66.     Defendants' conduct has caused, is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting each Defendant from

further infringing Plaintiff's copyrights and other rights and ordering impoundment and

destruction of all unauthorized copies of the exocad DentalCAD software programs.

## COUNT V

## CIRCUMVENTION OF COPYRIGHT PROTECTION SYSTEMS

## 17 U.S.C. § 1201(a)

67.     Plaintiff incorporates and realleges as if fully set forth herein paragraphs 1

through 66 of this Complaint.

68.     By hacking and illegally cloning Plaintiff's security dongles as alleged in this

Complaint, Defendants willfully circumvented the technological measure, namely, encryption

software contained within each security dongle, which effectively controls access to Plaintiff's

exocad DentalCAD Software Programs.

69.     The exocad security dongle effectively controls access to the exocad DentalCAD

Software Programs, in the ordinary course of its operation, as it is only provided with the

authority of the copyright owner, and requires the application of information, or a process or a

treatment, to gain access to the exocad DentalCAD Software Programs.

70.     Specifically, Defendants descrambled a scrambled work, decrypted an encrypted

work, or otherwise avoided, bypassed, removed, deactivated or impaired the security features of

the exocad security dongle so as to circumvent the technological measure that effectively

controls access to Plaintiff's exocad DentalCAD Software Programs.

71.     Defendants then manufactured, offered to the public, provided, or otherwise

trafficked in the illegally hacked and cloned security dongles, other software, product,

component, service or device, that was and is primarily designed or produced for the purpose of

circumventing Plaintiff's security dongle and the encryption software it contains which effectively controls access to Plaintiff's exocad DentalCAD Software Programs.

72.     The illegally hacked and cloned security dongles, other software, product, component, service or device, manufactured, offered to the public, provided, or otherwise trafficked in by Defendants has only limited or no commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to Plaintiff's exocad DentalCAD Software Programs.  Defendants then marketed the illegally hacked and cloned security dongles, other software, product, component, service or device directly and through third parties acting with Defendants' knowledge for use in circumventing Plaintiff's security dongles that effectively control access to Plaintiff's exocad DentalCAD Software Programs.

73.     By their conduct as alleged herein Defendants have intentionally and willfully, and in disregard of and with indifference to Plaintiff's rights, violated and are violating 17 U.S.C. § 1201(a)(1)(A), 1201(a)(2).

74.     By their ongoing intentional and willful conduct in violation of 17 U.S.C. § 1201(a), Defendants have caused and are causing irreparable harm to Plaintiff that cannot be fully compensated or measured in money.  Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. § 1203(b)(1), Plaintiff is entitled to preliminary and permanent injunctive relief prohibiting Defendants from violating 17 U.S.C. § 1201 and impoundment and destruction of any product, component, service or device, including software and any hacked or cloned security dongles in the custody or control of Defendants that was involved in the violations pursuant to 17 U.S.C. § 1203(b)(2).

75.     As a direct and proximate result of each Defendant's violation of 17 U.S.C. §
1201, Plaintiff is entitled to actual damages and any additional profits of the violator as provided
in 17 U.S.C. § 1203(c)(2).

76.     For each violation of 17 U.S.C. § 1201, Plaintiff is entitled to statutory damages,
at Plaintiff's election,  in the sum of not less than $200 or more than $2,500 per act of
circumvention, device, product, component, offer or performance of service, including for each
hacked and cloned security dongle pursuant to 17 U.S.C. § 1203(c)(3)(A).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against each Defendant and relief as follows:

1.     For entry of preliminary and permanent injunctions:

a)     enjoining each Defendant from directly and indirectly infringing
Plaintiff's rights in the registered exocad DentalCAD Software Programs, including without
limitation by copying, distributing, displaying, performing, or creating derivative works of the
exocad DentalCAD Software Programs, except pursuant to a lawful license and express written
authority from Plaintiff;

b)     enjoining each Defendant from directly or indirectly circumventing any
technological measure, including the exocad security dongles, that effectively controls access to
Plaintiff's exocad DentalCAD Software Programs;

c)     enjoining each Defendant from directly or indirectly circumventing any
technological measure, including the exocad security dongles, that effectively protects Plaintiff's
copyrights in the exocad DentalCAD Software Programs;

d) Requiring each defendant to deliver to Plaintiff all unauthorized copies of the exocad DentalCAD Software Programs transferred to or contained on any physical medium or device in Defendant's possession, custody or control;

e) Requiring each defendant to deliver to Plaintiff all unauthorized copies of each hacked and cloned security dongle in Defendant's possession, custody or control;

f) Requiring each defendant to identify each person or entity to which any defendant copied, distributed, performed or transferred any copy of Plaintiff's exocad DentalCAD Software Programs and/or hacked and cloned security dongles.

2.      For Judgment in favor of Plaintiff against Defendants that Defendants have:

a) willfully infringed Plaintiff's rights in Plaintiff's federally registered copyrights pursuant to 17 U.S.C. § 501;

b) willfully violated the anticircumvention provisions of 17 U.S.C. § 1201;

c) otherwise injured Plaintiff directly causing actual damages to Plaintiff and additional unlawful profits to Defendants by Defendants' illegal acts and conduct alleged in this Complaint.

3.      For Judgment in favor of Plaintiff against Defendants for actual damages and additional profits of the infringers pursuant to 17 U.S.C. § 504 in an amount to be determined at trial.

4.      For Judgment in favor of Plaintiff against Defendants for actual damages and additional profits of the infringers pursuant to 17 U.S.C. § 1203(c)(2) in an amount to be determined at trial.

5.      For prejudgment and post-judgment interest according to law;

6.      For Plaintiff's costs and disbursements in this action;

7.      For an Order of Impoundment under 17 U.S.C. § 503 and § 1203(b)(2)

impounding all infringing & unauthorized copies of Plaintiff's registered exocad DentalCAD

Software Programs and unauthorized hacked or cloned dongles which are in Defendants'

possession or custody or under Defendants' control.

8.      Pursuant to 17 U.S.C. 1203(b)(6), for remedial modification or destruction of any

product, service, device, component, software, hacked and cloned security dongle, or part

thereof, involved in the anticircumvention violations of 17 U.S.C. § 1201, that are in the custody

or control of Defendants, or that have been impounded under 17 U.S.C. § 1203(b)(2).

9.      For an award of reasonable attorney's fees, in the Court's discretion, to Plaintiff

on the anticircumvention claims as provided in 17 U.S.C. §1203(b)(5).

10.     For Judgment in favor of Plaintiff against Defendant, awarding Plaintiff such

other declaratory, injunctive and further relief as may be just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands trial by jury on all

issues triable by right of jury.

DATED:  August 11, 2017                    Respectfully submitted,

                                  By:     /s/ Brian B. Darville
                                          Brian B. Darville (VSB 25285)
                                          OBLON, MCCLELLAND,
                                          MAIER & NEUSTADT, LLP
                                          1940 Duke Street
                                          Alexandria, VA  22314
                                          Tel:  703-413-3000
                                          Fax:    703-413-2220
                                          tmdocket@oblon.com

                                          **Attorneys for Plaintiff**
                                          **exocad GmbH** 17785198.1

17785198.1